COMMONWEALTH *vs.* JOSEPH J. BUTYNSKI.

Franklin. April 6, 1959. — May 4, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Evidence*, Relevancy and materiality; Demonstration; Opinion: expert.

At a criminal trial where the Commonwealth contended that the defendant on a certain date was guilty of promoting a lottery in violation of G. L. c. 271, § 7, by paying money to a player of a pinball machine in a tavern for "free games" won by him, evidence that about ten days before the date of the offence charged the defendant had paid money for "free games" to another player of the machine was admissible [152]; it was within the discretion of the judge to allow a demonstration of the playing of the machine in court [153]; and the working of the mechanism of the machine was a proper subject of expert testimony [153–154].

COMPLAINT, received and sworn to in the District Court of Franklin on January 9, 1957.

Upon appeal to the Superior Court the case was tried before *Casey*, J., a District Court judge sitting under statutory authority.

*Manuel Katz*, (*Douglas E. O'Neil* with him,) for the defendant.

*Sanford Keedy*, District Attorney, & *Oscar Grife*, Assistant District Attorney, for the Commonwealth, submitted a brief.

CUTTER, J. The defendant was charged by complaint with being concerned on January 7, 1957, with setting up and promoting a lottery for money in violation of G. L. c. 271, § 7. He was found guilty in the District Court. After trial on appeal in the Superior Court, the jury returned a verdict of guilty. The only exceptions argued were those based upon the admission of certain testimony.

1. The Commonwealth, subject to the defendant's exception, was permitted to introduce testimony that, on December 29, 1956, about ten days prior to the date (January 7,

1957) of the offence charged, two State police officers played a pinball machine in a tavern in Greenfield. One of them (one Dotty) "played for about twenty minutes and won over fifty games. He played some [games] off, still leaving fifty free games." The defendant told the officer "to knock the games off" and paid him $2.50 apparently for the free games. The officers returned to the tavern (Dotty remaining outside) on January 7, 1957, and the other officer (one Erdeski) was paid by the defendant $3 for sixty free games which he then won. The defendant contends that evidence of the activities on December 29, 1956, was inadmissible as tending to prove the commission of an offence, separate from, but similar to, that of January 7, 1957.

The evidence of the events on December 29 tended "to show that the defendant . . . had entered into a general scheme" to conduct a lottery in the tavern "substantially by the same means, as appears in the present case," with respect to the events of January 7. The evidence "is admissible to show the intent and purpose with which . . . [the defendant] acted and that the acts charged were part of a . . . scheme." *Commonwealth* v. *Corcoran,* 252 Mass. 465, 478. See *Commonwealth* v. *Robinson,* 146 Mass. 571, 577; *Commonwealth* v. *McHugh,* 316 Mass. 15, 23. See also annotations, 15 A. L. R. 2d 1080; 40 A. L. R. 2d 817. The Commonwealth was contending that the defendant made cash pay-offs on the number of free games won and that the playing of the machine on such a basis constituted a lottery. *Commonwealth* v. *Macomber,* 333 Mass. 298, 300. The consistency of the defendant's conduct on two occasions (the earlier within a few days of the later) tended to show (a) relevant background, (b) that the payment on January 7 was intentional, not accidental, and (c) that it was part of a general purpose and course of operations having an intent and character violative of § 7. *Commonwealth* v. *Ferry,* 146 Mass. 203, 209. See *Commonwealth* v. *Farmer,* 218 Mass. 507, 512–513; *Commonwealth* v. *Patalano,* 254 Mass. 69, 73; Wigmore, Evidence (3d ed.) §§ 300–369, esp. § 367. This was not an instance of introduction of inadmissible

evidence of a prior offence to prove the actual commission of, or tendency to commit, the offence charged. Cf. *Commonwealth* v. *Bishop*, 296 Mass. 459, 462; *Commonwealth* v. *Stone*, 321 Mass. 471, 473–474 (stating the general rule that conduct within a brief period may be admissible, but holding the particular evidence too remote in time); *Commonwealth* v. *Ellis*, 321 Mass. 669, 670.

2. Officer Erdeski was permitted, subject to the defendant's exception, to demonstrate on the very machine used on January 7 (which was similar to but not the same machine used on December 29) how the machine was played. The legs of the machine were in different positions in court from their positions on January 7. It was within the discretion of the trial judge to determine whether the demonstration would be fair and informative, and whether the circumstances in court were sufficiently similar to those at the time of the offence to make the demonstration relevant. *Commonwealth* v. *Noxon*, 319 Mass. 495, 541–542, and cases cited. See *Commonwealth* v. *Lake*, 317 Mass. 264, 266–267.

3. The same police officer was permitted, subject to the defendant's exception, to testify that the ball in the machine could not be controlled "after it comes out of the alley unless you push the machine, and if you push the machine, the machine will tilt and the automatic electrical control goes off" and (in various forms of testimony) that winning "free games" was "[l]uck; and a matter of chance." Similar testimony was given by the other officer. The machine was in court. It had electrical controls. It was played with five balls. On this record, we cannot say that it was not a sufficiently complicated machine to require explanation to the jury and to be the subject of expert testimony as a matter not of general and common knowledge. Although simple forms of such devices are familiar playthings for children, it was within the trial judge's discretion to admit expert testimony explaining more elaborate and complex devices of this type. No objection appears to have been made on the ground that the officers were not

qualified experts on such machines and there is affirmative evidence that one of them, at least, "had over thirteen years experience in playing machines." Their testimony was admissible. *Coulombe* v. *Horne Coal Co.* 275 Mass. 226, 229–230. *Jackson* v. *Anthony*, 282 Mass. 540, 543–544. *Friese* v. *Boston Consol. Gas Co.* 324 Mass. 623, 628. See *Commonwealth* v. *Capalbo*, 308 Mass. 376, 379–380. Expert testimony of this type appears to have been admitted in *Commonwealth* v. *Lake*, 317 Mass. 264, 266, with respect to a somewhat comparable device, although there exceptions to the judge's charge on other matters were sustained. Cf. *Scully* v. *Joseph Connolly Ice Cream Sales Corp.* 336 Mass. 392, 394.

*Exceptions overruled.*