## Commonwealth *vs.* Michael King.

Norfolk.  May 3, 1982. — October 13, 1982.

Present: Hennessey, C.J., Wilkins, Nolan, Lynch, & O'Connor, JJ.

*Unnatural Sexual Intercourse. Practice, Criminal,* Indictment. *Evidence,* Other offense, Admissions and confessions, Relevancy and materiality. *Constitutional Law,* Admissions and confessions.

An indictment under G. L. c. 265, § 23, charging a defendant with committing a sexual offense "on divers dates and times" with a named child was not defective for failure to allege the time of the offense, and did not abridge the defendant's constitutional rights to be informed of charges against him, to present evidence, and to receive a unanimous verdict of the jury, where the defendant might have requested a bill of particulars but did not do so. [467-469]

At the trial of an indictment charging unlawful, unnatural sexual intercourse with a child under sixteen years of age, the judge did not abuse his discretion in admitting, on the issue of the defendant's state of mind, intention, and pattern of conduct during the time period of the alleged crimes, testimony regarding the defendant's sexual conduct with a child not named in the indictment, where both children, brother and sister, lived in the same house with the defendant, the sexual acts took place during the same time period, the victims were of similar age, and the form of sexual conduct was similar, and where the testimony was accompanied by adequate limiting instructions. [469-473] O'Connor, J., dissenting.

At the trial of an indictment charging unlawful, unnatural sexual intercourse with a child under sixteen years of age, the judge did not err in admitting, under the doctrine of fresh complaint, corroborative testimony of a policewoman as to the victim's statements to her in an interview conducted one month after the child had begun living apart from the defendant, where other evidence tended to show that the complaint was reasonably prompt in the circumstances. [473-474]

At a criminal trial, the judge did not err in admitting for impeachment purposes statements the defendant made at a police station after stating that he wanted to consult with an attorney, or in charging the jury that they could consider the defendant's admissions substantively if they found that the statements were voluntarily made where, at the time of the interview, the defendant was not in custody or otherwise deprived of his freedom in any significant way. [474]

At the trial of an indictment charging sexual offenses with a child, no substantial risk of a miscarriage of justice resulted from the admission, without objection, of testimony indicating that a box containing sexual paraphernalia to which another witness had referred was in the possession of the victim's mother, who had invoked her privilege against self-incrimination. [475]

At the trial of an indictment charging sexual offenses with a child, no error appeared in the admission of testimony concerning certain sexual paraphernalia which were adequately connected with the crimes charged and whose probative value outweighed any potential prejudice to the defendant. [475-476]

Admission of testimony by a witness at a criminal trial that the defendant carried a gun during a meeting with her, even if error, was harmless. [475-476]

At the trial of an indictment charging unlawful, unnatural sexual intercourse with a child under sixteen years of age, there was no error in the judge's instruction defining unnatural intercourse. [476]

The judge at a criminal trial did not err in denying the defendant's motion for a new trial on the ground of ineffective assistance of counsel. [476]

INDICTMENT found and returned in the Superior Court Department on March 26, 1979.

The case was tried before *Sullivan, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Elizabeth A. Lunt* for the defendant.

*Charles J. Hely*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant was convicted after a jury trial of unlawful, unnatural sexual intercourse with a child under sixteen years of age. G. L. c. 265, § 23. The defendant appealed from his conviction, and new counsel was appointed. The defendant then filed a motion for a new trial and a motion to dismiss. The trial judge denied both motions. The case is before us on a consolidated appeal of the conviction, the denial of the motion for a new trial, and the denial of the motion to dismiss. The defendant argues that the judge erred: (1) in denying the motion to dismiss,

which was based on the ground that the indictment failed to charge an offense; (2) in admitting evidence of unlawful sexual acts with the victim's brother; (3) in admitting hearsay evidence of statements made by the victim; (4) in admitting the defendant's statements made in violation of his constitutional rights; (5) in admitting testimony concerning a witness who did not take the stand; (6) in admitting testimony concerning sexual paraphernalia and a gun; (7) in failing to enter a required finding of not guilty; (8) in misstating the evidence in his instructions to the jury; and (9) in denying the defendant's motion for a new trial. The defendant also argues that he was denied effective assistance of counsel at the trial. We have examined each of the defendant's contentions and find that they are without merit. We affirm the judgment of conviction.

The testimony at trial follows. The victim was eleven years old at the time of trial. The defendant was her mother's boyfriend and lived with the victim, her mother, her brother and her sister from sometime in 1977, until September, 1978. The victim testified that while the defendant was living with the family he came to her bedroom and touched her vagina, outside and inside, with his fingers, his tongue and a vibrator. She also testified that the defendant made her touch his penis with her fingers and her mouth. In addition, she testified that the defendant caused a dog to lick her vagina. Although the victim was unable to specify the number of times these acts occurred, she stated that they happened more than once.

The victim's aunt testified that on September 14, 1978, the victim's mother came to her house. The mother brought with her a box and bag containing sexual paraphernalia including a vibrator. Several days thereafter the mother brought her children to the aunt, and they remained with her until they were placed in foster care. The aunt testified that she and her son met the defendant at a restaurant on September 26, 1978. She testified that the defendant told her and her son that he had engaged in sexual acts with the victim four times a week and was having oral sex with

the victim's younger brother more frequently. The aunt further testified that the defendant told them he had been using a dog on the children. The defendant was carrying a gun at the meeting.

Barbara DeNatale, a Quincy police officer, testified that she interviewed the aunt on September 27, 1978, and took the box and bag containing sexual paraphernalia. She also testified that on October 3, 1978, she interviewed the victim, then nine years old, at a hospital in the presence of a State trooper, a social worker, and a counselor. Over defense counsel's objection, Officer DeNatale repeated what the victim had told her concerning the defendant's sexual acts. Her testimony essentially corroborated the victim's testimony at trial.

The defendant testified, denying that he had ever had sexual contact with the victim. He admitted to meeting the aunt and her son in the restaurant but denied that he had a gun, and denied that he told her that he had sexual contact with the victim. On cross-examination, the prosecutor questioned the defendant about statements he made to officers at the Weymouth police station. Portions of the transcript of that interview were read to the jury by the prosecutor.

1. *The indictment.* The defendant was convicted on an indictment which charges that he, "on divers dates and times from on or about the first day of January, 1977 through on or about the twenty-eighth day of September, 1978 at Weymouth in the County of Norfolk, did unlawfully have sexual intercourse with and did abuse [the victim], a child under sixteen years of age." The defendant argues, since rape of a child is not a continuing offense, the indictment fails to set forth any offense known to the law because it charges rape of a child as a continuing offense. He contends that the indictment is defective and ought to be dismissed. We do not agree. The indictment clearly states an offense, the offense of statutory rape. The named victim is specifically alleged to be "a child under sixteen years of age." The time of the offense is not an element of this crime and need not be precisely alleged. G. L. c. 277, § 20. See

*Commonwealth* v. *Stasiun*, 349 Mass. 38, 47 (1965); *Commonwealth* v. *Dutney*, 4 Mass. App. Ct. 363, 374 (1976).

The defendant further argues that the indictment is defective because it violated his constitutional rights (1) to be informed of the charges against him, (2) to present a defense, and (3) to be convicted only by a unanimous jury verdict.[1] We note that these arguments were not raised before or during the trial but are raised for the first time by new counsel appointed for the appeal. Trial counsel could have requested a bill of particulars but failed to do so. G. L. c. 277, § 34. Mass. R. Crim. P. 13 (b)(1), 378 Mass. 871 (1979).[2] See *Commonwealth* v. *Soule*, 6 Mass. App. Ct. 973, 974 (1979); *Commonwealth* v. *Downey*, 288 Mass. 147, 149 (1934). The defendant does not allege that he would have presented his defense any differently if he had been informed of the exact dates on which the alleged sexual acts occurred. He did not present a defense of alibi or nonaccess to the victim. He in fact testified that during the twenty-month period alleged in the indictment he lived in the same residence as the victim. His defense was that while living with the victim, he did not engage in any sexual acts with her. In addition, it is clear from the trial transcript that the victim, who was nine years old at the time of

---

[1] In particular, the defendant argues his right to a unanimous jury verdict was violated because some of the jurors might have been satisfied as to the defendant's guilt of one act, while others might be satisfied as to his guilt of another.

[2] General Laws c. 277, § 34, as amended by St. 1979, c. 344, § 34, provides: "An indictment shall not be dismissed or be considered defective or insufficient if it is sufficient to enable the defendant to understand the charge and to prepare his defense; nor shall it be considered defective or insufficient for lack of any description or information which might be obtained by requiring a bill of particulars."

Massachusetts Rule of Criminal Procedure 13 (b) (1), 378 Mass. 871 (1979), provides: "Within the time provided for the filing of pretrial motions by this rule or within such other time as the judge may allow, a defendant may request or the judge upon his own motion may order that the prosecution file a statement of such particulars as may be necessary to give both the defendant and the court reasonable notice of the crime charged, including time, place, manner, or means."

the acts, was unable to specify the exact dates on which the sexual acts occurred. See *Commonwealth* v. *Vernazzarro*, 10 Mass. App. Ct. 897 (1980). In view of the above considerations, we do not find a convincing basis for holding that the indictment should have been dismissed for failure to specify with more particularity the dates of the sexual acts.

2. *Evidence of other crimes*. The victim's aunt, a prosecution witness, testified that the defendant had told her that he was having sex with the victim approximately four times a week. She further testified that the defendant had admitted having oral sex with the victim's younger brother, and had admitted using a dog on the victim as well as on her brother. Defense counsel objected to the testimony concerning the brother. The judge instructed the jury that the defendant was not charged with having sexual relations with the brother and that they should not use this evidence as relevant to the issue of his guilt on the charge of having sexual relations with the victim. The judge stated that the evidence could be used only as the jury might find it relevant to the defendant's state of mind, intention and pattern of conduct during the time of the alleged crimes. There was no further testimony concerning the victim's brother and the evidence was not alluded to in the closing arguments or the judge's charge. The defendant argues that the admission of this evidence was reversible error.

Evidence of independent past crimes unconnected with the crimes for which the defendant is on trial may not be used to show commission of the crime charged. *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 695 (1979). There are, however, many exceptions to this rule of evidence. For example, when "the evidence is not too remote in time, or is connected with the facts of the case, it may be admitted to establish 'knowledge, intent, motive, method, material to proof of the crime charged.'" *Id.*, quoting from *Commonwealth* v. *Murphy*, 282 Mass. 593, 598 (1933). See generally P.J. Liacos, Massachusetts Evidence 420-422 (5th ed. 1981). "One of the recognized exceptions invariably fol-

lowed in this Commonwealth is that, when a defendant is charged with any form of illicit sexual intercourse, evidence of the commission of similar crimes by the same parties though committed in another place, if not too remote in time, is competent to prove an inclination to commit the [acts] charged in the indictment . . . and is relevant to show the probable existence of the same passion or emotion at the time in issue." *Commonwealth* v. *Bemis*, 242 Mass. 582, 585 (1922). We also have held that testimony concerning other sexual contacts between the parties is admissible to "render it not improbable that the act might have occurred." *Commonwealth* v. *Piccerillo*, 256 Mass. 487, 489 (1926). In *Commonwealth* v. *Machado*, 339 Mass. 713, 714-715 (1959), we held that testimony that the defendant was seen partially naked and in bed with the victim six months after the date of the statutory rape charged in the indictment was admissible to show the existence of the "same passion or emotion on the defendant's part." On the other hand, evidence of a separate sexual act with another person is inadmissible if it is unconnected in time, place, or other relevant circumstances to the particular sex offense for which the defendant is being tried, *Commonwealth* v. *Welcome*, 348 Mass. 68, 70 (1964), or if it has "no tendency to show a lecherous disposition toward the [victim] named in the indictment." *Commonwealth* v. *Ellis*, 321 Mass. 669, 670 (1947).

In *Commonwealth* v. *Gallison*, 383 Mass. 659, 672-673 (1981), we discussed the issue of the admissibility of evidence of the abuse of one child, Edward, in a trial of the mother for the manslaughter of the child's sister, Jennifer. We framed the question of admissibility as whether the evidence of the conduct toward Edward was "sufficiently related in time and location to be logically probative" of the conduct toward Jennifer and whether the conduct toward the two children formed a "temporal and schematic nexus" which rendered the evidence admissible to show a common course of conduct regarding the two children. We held that the evidence was properly admitted. *Id.* In *Commonwealth*

v. *Sylvester*, 13 Mass. App. Ct. 360, 362, further appellate review granted, 386 Mass. 1102 (1982), the Appeals Court applied a similar test. In *Sylvester*, the defendant was indicted for unnatural sexual acts on three children under sixteen. The court concluded that severance of the charges was not required because a common course of conduct would have caused the evidence of any two incidents of sexual molestation to be admissible in connection with a separate trial of the third.

We have held admissible evidence of other crimes for the purpose of showing a common scheme or course of conduct in numerous other cases. *Commonwealth* v. *Shoening*, 379 Mass. 234, 242 (1979) (conspiracy to bribe and to steal). *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 695 (1979) (receiving stolen securities and possession of counterfeit currency). *Commonwealth* v. *Campbell*, 371 Mass. 40, 42 (1976) (breaking and entering). *Commonwealth* v. *Baldassini*, 357 Mass. 670, 678 (1979) (gambling). *Commonwealth* v. *Butynski*, 339 Mass. 151, 152 (1959) (lottery). The defendant is correct in arguing that we have not held that evidence of a defendant's sexual conduct with a child not named in the indictment is admissible in an action charging a sexual offense against the named child. Other States have held that such evidence is admissible.[3] Although we have

---

[3] See, e.g., *State* v. *Dowell*, 47 Idaho 457 (1929) (charge of statutory rape; admitted evidence of intercourse or attempted intercourse with other girls under fifteen in the victim's presence in the same room at other times); *People* v. *Crocker*, 25 Ill. 2d 52 (1962) (charge of statutory rape; evidence of sexual assault on another child admissible as part of "res gestae"); *State* v. *Schlak*, 253 Iowa 113, 116 (1961) (charge of committing lewd act on child; evidence of similar acts with three other children admissible to show motive, the desire to gratify desire by molesting young girls); *State* v. *Whiting*, 173 Kan. 711, 713 (1953) (charge of lascivious behavior with one child; evidence of similar offenses with two other children admissible to show lustful disposition of defendant); *State* v. *Shtemme*, 133 Minn. 184 (1916) (charge of statutory rape of thirteen year old girl; evidence of similar conduct with another young girl in the victim's presence was admissible); *State* v. *Simerly*, 463 S.W.2d 846 (Mo. 1971) (charge of incest with fifteen year old daughter; evidence of intercourse with another daughter beginning at age five could properly be considered as corroboration); *State* v. *Jackson*, 82 Ohio App. 318, 322 (1948) (charge of incest with daughter; separate acts of incest with other daugh-

not done so, we have not been confronted with a case where the uncharged conduct is so closely related in time, place, age, family relationship of the victims, and form of the sexual acts. Here, both children lived in the same house with the defendant, the sexual acts took place during the same time period, the victims were of similar age (both under ten), and the form of the sexual conduct (oral sex and use of the dog) was similar. These factors make this evidence distinguishable from the unconnected acts we excluded in *Welcome, supra.* The evidence here showed a common pattern or course of conduct toward the two children, and was sufficiently related in time and location to be logically probative. *Commonwealth v. Gallison,* 383 Mass. 659, 672-673 (1981). The evidence corroborated the victim's testimony and rendered it not improbable that the acts charged might have occurred. *Commonwealth v. Piccerillo,* 256 Mass. 487, 489 (1926). Since this evidence had probative value, it was for the judge to determine whether its probative value outweighed the risk of prejudice. *Commonwealth v. Jackson,* 384 Mass. 572, 578-579 (1981). Because the acts involved here formed a "temporal and schematic nexus," *Gallison, supra,* we cannot say that the judge abused his discretion.

We note also that evidence concerning the victim's brother was elicited only in response to two questions put to the witness by the prosecutor. The judge gave a limiting instruction immediately following the testimony. By contrast, there was extensive evidence concerning the defend-

ters are "so related to the offense for which the defendant is on trial that they have a logical connection therewith and may reasonably disclose a motive"); *State v. Putney,* 110 Or. 634 (1924) (charge of statutory rape of twelve year old girl; admitted defendant's statement to victim around the time of offense that he had been sexually familiar at an earlier time with another young girl); *McKinney v. State,* 505 S.W.2d 536, 541-542 (Tex. Crim. App. 1974) (charge of statutory rape on defendant's adopted daughter; fondling and sodomy with other adopted daughters admissible); *Proper v. State,* 85 Wis. 615 (1893) (charge of intercourse with a ten year old girl; later intercourse with another girl in the same house admissible). See also 2 J. Wigmore, Evidence § 398, at 456-457 (Chadbourn rev. 1979).

ant's unnatural sexual acts with the victim. This evidence was admitted through the victim's own testimony as well as through her aunt and Officer DeNatale. The evidence of the crimes with the named victim, which was unquestionably admissible, was highly inflammatory as well. The trial was focused throughout on the specific crimes charged. See *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 695 (1979); *Commonwealth* v. *Cepulonis*, 374 Mass. 487, 498 (1978).

3. *Fresh complaint.* Officer DeNatale testified as to what the victim told her during an interview on October 3, 1978. The defendant objected to the admission of this testimony. The judge allowed the testimony as evidence of a fresh complaint, and instructed the jury that the testimony could only be considered for its possible corroborative value and only could be considered for this purpose if "you find reasonably . . . that this was a reasonable period in which to make a complaint." There was no error in admitting the corroborative testimony of this witness. See generally *Commonwealth* v. *Bailey*, 370 Mass. 388, 391-397 (1976). There was evidence to show that the victim's complaints were reasonably prompt in light of the circumstances. See *Commonwealth* v. *Healey*, 8 Mass. App. Ct. 938 (1979); *Commonwealth* v. *Wilson*, 12 Mass. App. Ct. 942 (1981) (a case markedly similar to this one), and cases cited therein. The victim stated that the last time she saw the defendant he had warned her not to tell anyone and threatened that if she did "he would do it to [her younger] sister next." The victim testified that she was afraid to tell her mother because she was afraid of the defendant, and because she thought her mother would be angry with her. At the time she made the statement to Officer DeNatale, she knew that the defendant was still her "mother's boyfriend." Furthermore, the victim testified that the mother also participated in sexual acts with the victim in the defendant's presence. The victim made the statement after she had been living apart from the defendant and her mother for approximately one month. In view of the circumstances, it was not error to admit the

corroborative testimony as a fresh complaint with appropriate limiting instructions to the jury.

4. *Statements of the defendant.* The defendant next argues that it was error for the judge to admit for impeachment purposes statements that the defendant made to the Weymouth police in an interview which took place on October 13, 1978. The defendant also argues that it was error for the judge to charge the jury that they could consider the defendant's admissions substantively if they found that the statements were voluntarily made. The defendant did not object to the admission of the statements during the trial and did not object to the judge's instruction on this point. The defendant contends on this appeal that the statements were inadmissible because they occurred after he had stated that he wanted to consult with an attorney.

The exclusionary rule of *Miranda* v. *Arizona*, 384 U.S. 436, 444 (1966), applies only if the Miranda requirements were violated during a "custodial interrogation." The interview involved here cannot be considered a custodial interrogation. The defendant was not under arrest or otherwise in custody during his interview at the police station on October 13, 1978. He came voluntarily to the police station at the request of the police. There is no evidence that his freedom to depart was restricted in any way. At the close of the fifty-minute interview the defendant did in fact leave the police station without hindrance. No charge was filed against the defendant until five months after the interview took place. Like the defendant in *Oregon* v. *Mathiason*, 429 U.S. 492, 495 (1977), the defendant here was not in custody "or otherwise deprived of his freedom of action in any significant way." See *Commonwealth* v. *Walden*, 380 Mass. 724, 730-731 (1980); *Commonwealth* v. *Simpson*, 370 Mass. 119, 125 (1976). Cf. *Commonwealth* v. *Haas*, 373 Mass. 545, 551-554 (1977). The statements made by the defendant were properly admitted by the judge and there was no error in the judge's instruction.

5. *Testimony concerning a person who did not testify.* The victim's mother did not testify. The judge conducted a hearing at which he advised her of her privilege against self-incrimination. Through her counsel, she indicated her intention to invoke the privilege. During the direct examination of a police sergeant, the prosecutor elicited testimony to the effect that the box which contained the sexual paraphernalia had been delivered to the lawyer representing the victim's mother. This testimony followed questions raised by the defendant concerning the location of the box. The police sergeant said that the box had been returned to her after the police were initially informed that she would testify for the Commonwealth. The judge permitted this testimony because he ruled that the Commonwealth had the right to explain why the physical evidence was missing. The defendant did not object. There was no error presenting a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967). The denial of a motion for a new trial on this ground was equally free of error. See *Commonwealth* v. *Brown,* 378 Mass. 165, 171 (1979).

6. *Testimony concerning the sexual paraphernalia and a gun.* The defendant argues that it was error for the judge to admit testimony concerning the sexual paraphernalia and a gun because the testimony was irrelevant and prejudicial. There was no error in admitting this testimony. None of the sexual paraphernalia were admitted in evidence or displayed to the jury. The victim had testified that the defendant had used a vibrator on her, and a vibrator matching this description was among the items about which there was testimony. The items were sufficiently identified as belonging to the defendant. They were adequately connected with the crime charged and the judge did not abuse his discretion in concluding that the probative value of this evidence outweighed the potential prejudice. See *Commonwealth* v. *Haley,* 363 Mass. 513, 524 (1973); *Commonwealth* v. *Chalifoux,* 362 Mass. 811, 815-816 (1973). The admission of the aunt's testimony that the defendant carried a gun during his

meeting with her could not have had a significant prejudicial effect. Even if it were error to admit this testimony, it was harmless.

7. *Other claims of error.* There was no error in the instruction defining unnatural intercourse. The judge's instructions were entirely consistent with the teachings of *Commonwealth* v. *Gallant,* 373 Mass. 577, 584 (1977). The judge did not misstate the evidence during his charge. There was no error in denying the motion for a new trial on these grounds nor on the ground that the judge should have entered a required finding of not guilty. There was an abundance of evidence to satisfy a rational trier of fact of guilt beyond a reasonable doubt. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979).

Finally, the defendant argues that the judge incorrectly denied his motion for a new trial on the ground of ineffective assistance of counsel. We note that the motion for a new trial was considered and denied by the same judge who presided at the trial and we give weight to his ruling. *Commonwealth* v. *Drayton,* 386 Mass. 39, 41-42 (1982). We have examined the record before us. It does not demonstrate "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). Trial counsel's tactical decisions in this case were not "manifestly unreasonable." *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978). The judge in fact observed that trial counsel was experienced and had "good, intuitive trial sense" regarding his tactical decisions. The defendant has failed to show that he was deprived of an "otherwise available, substantial ground of defence," *Saferian, supra,* or that "better work would have accomplished something material for the defense." *Commonwealth* v. *Dalton,* 385 Mass. 190, 195 (1982).

*Judgment affirmed.*

O'CONNOR, J. (dissenting). The court holds that the judge properly admitted over objection evidence that the defendant had engaged in sexual acts with the victim's younger brother. I believe this holding to be ill-advised and unsupported by our case law. Because I cannot conclude that the admission of this evidence was harmless, I dissent.

Evidence of other crimes is inadmissible to prove commission of the crime charged, if the only relevance of the evidence is to prove criminal disposition. *Commonwealth v. Stone,* 321 Mass. 471, 473 (1947). The rationale for this rule is that while such evidence may be marginally probative, "there is the danger that, because a defendant appears to be a bad man capable of, and likely to commit, such a crime as that charged, a jury might be led to dispense with proof beyond a reasonable doubt that he did actually commit the crime charged. Moreover, it is not fair that a defendant in the course of a trial should be called upon to defend himself against accusations not set forth in the indictment." *Id.* See McCormick, Evidence § 188 (2d ed. 1972).

Relevant evidence of other crimes may be admissible if its relevance does not depend upon showing criminal disposition. *Commonwealth v. Schoening,* 379 Mass. 234, 242 (1979). *Commonwealth v. Baker,* 368 Mass. 58, 85-86 (1975). *Commonwealth v. Murphy,* 282 Mass. 593, 598 (1933). For instance, "[i]n trials of indictments for larceny by obtaining money or property by false pretenses it has been held, as bearing on the defendant's intent, that his criminal conduct on another occasion is admissible, provided it is reasonably near in time and so connected with the crime charged in the indictment as to show unity of plot and design and that it was part of a common plan or scheme to defraud." *Commonwealth v. Baker, supra* at 85-86, quoting from *Commonwealth v. Stone, supra* at 473-474.

In *Commonwealth v. Gallison,* 383 Mass. 659, 673 (1981), the defendant claimed error in the trial judge's denial of her motion to sever two charges for which she was on trial, assault and battery on one of her children and man-

slaughter of another. The issue was whether evidence that the defendant physically abused and neglected her son would have been admissible in a separate trial for manslaughter of her daughter. *Id.* at 673. Evidence of out-of-court statements by the defendant showed that the daughter had become critically ill, the defendant failed to seek medical help and death resulted. *Id.* at 666-667. The defendant's attitude toward the daughter was crucial to the issue of recklessness, and we held that the evidence of the defendant's conduct toward her son would have been admissible as bearing on the defendant's lack of concern for her daughter's well being. *Id.* at 672-673. We viewed the evidence as probative of an ongoing course of conduct, *id.* at 1275, fitting within the "common scheme" principle of *Commonwealth* v. *Schoening, supra* at 242, and *Commonwealth* v. *Cutler,* 356 Mass. 245, 248 (1979). *Commonwealth* v. *Gallison, supra* at 673.

Although the line of distinction may be fine, I do not believe that our holding in *Commonwealth* v. *Gallison, supra,* logically compels us to conclude that the evidence of other crimes is admissible in this case, and unless so compelled, I would not hold evidence with such prejudicial impact to be admissible. We determined in *Gallison* that evidence of a mother's disinterest in the welfare of her three year old son was sufficiently probative of her disregard for the welfare of her two year old daughter to justify its admission. That determination does not require us to hold that evidence of a person's perverted sexual interest in a little boy is sufficiently probative of the same disposition toward the boy's sister to justify admission of that evidence to prove the person's state of mind, and by that to prove commission of the act essential to the crime. In *Gallison,* evidence of the other crime was not admitted to prove the defendant's commission of the criminal act, as the majority would permit here.

This court has held that "when a defendant is charged with any form of illicit sexual intercourse, evidence of the commission of similar crimes *by the same parties* . . . if not

too remote in time, is competent to prove an inclination to commit the act charged in the indictment . . . and is relevant to show the probable existence of the same passion or emotion at the time in issue" (emphasis added). *Commonwealth* v. *Machado,* 339 Mass. 713, 715 (1959), quoting from *Commonwealth* v. *Bemis,* 242 Mass. 582, 585 (1922). However, in *Commonwealth* v. *Welcome,* 348 Mass. 68 (1964), we held that the rule of *Machado* was not to be extended to acts involving different victims. In *Welcome,* we held inadmissible in a trial for indecent assault and battery on a child under fourteen evidence that the defendant had assaulted other young girls. *Id.* at 70-71. Previously, in *Commonwealth* v. *Ellis,* 321 Mass. 669, 670 (1947), which, like *Welcome,* is indistinguishable from the present case, we held it was error to admit in a statutory rape trial evidence that the defendant molested a "somewhat older" sister, stating, "The only effect of [the testimony regarding the older sister] was to show that the defendant was a lewd man, and to lead the jury to believe that a man of his character would be likely to commit the crime charged. Where misconduct of a defendant has no relevancy except to provide a basis for such an argument, it may not be shown. . . . It is to be noted that the evidence in question had no tendency to show a lecherous disposition toward the younger child named in the indictment." *Ellis, supra* at 670.

It is clear that in *Commonwealth* v. *Gallison, supra,* this court did not intend to overrule *Commonwealth* v. *Welcome, supra,* or *Commonwealth* v. *Ellis, supra,* or to cast doubt upon the viability of the general rule requiring exclusion of evidence of other crimes to show criminal disposition. We should not do so now. The only effect of showing that this defendant sexually abused the victim's brother is to show that he is a lewd person who would be likely to commit the crime with which he is charged. The majority holding undermines, if it does not destroy, a time honored, salutary rule that "[f]airness to a defendant in a criminal case requires . . . that the commission by him of an independent crime cannot ordinarily be shown as evidence tend-

ing to show the commission of the crime charged." *Commonwealth* v. *Stone, supra* at 473.

The evidence was of a highly prejudicial nature. I cannot say that its admission had no bearing on the jury's verdict. I would reverse the judgment of conviction and remand for a new trial.